USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 11/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMAN PHARMACY, INC.
(d/b/a Fleetwood Specialty Pharmacy),

Plaintiff,

–against–

LUPIN PHARMACEUTICALS, INC.,

Defendant.

7:26-cv-5831 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Iman Pharmacy, Inc., doing business as Fleetwood Specialty Pharmacy ("Plaintiff" or "Fleetwood"), commenced this action in the Supreme Court of the State of New York, County of Westchester, against Defendant Lupin Pharmaceuticals, Inc. ("Defendant" or "Lupin"), asserting claims under New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, and N.Y. Gen. Bus. Law § 349. (ECF No. 1-1 ("Compl.").) By Notice of Removal, Defendant removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1.) Presently before the Court is Plaintiff's motion to remand the action to state court for lack of subject matter jurisdiction (ECF No. 16), together with Defendant's response to the Court's Order to Show Cause dated October 29, 2026 (ECF Nos. 24, 25). For the following reasons, Plaintiff's motion is GRANTED, Defendant's request for jurisdictional discovery is DENIED, and the action is remanded to state court.

## BACKGROUND

The following facts and procedural history are taken from the pleadings, the Notice of Removal, and the parties' submissions.

**I. Factual Background**

Plaintiff is a New York corporation and independent specialty pharmacy with its principal place of business in Mount Vernon, New York. (Compl. ¶ 4.) Defendant is a pharmaceutical manufacturer that, in May 2025, launched a generic version of tolvaptan, a drug indicated for slowing kidney function decline in adults at risk of rapidly progressing Autosomal Dominant Polycystic Kidney Disease ("ADPKD"). (*Id.* ¶¶ 5, 8.) Dispensing tolvaptan is governed by a Risk Evaluation and Mitigation Strategy ("REMS") program, under which pharmacies must be certified and manufacturers control distribution. (*Id.* ¶¶ 9, 11.) Plaintiff alleges that, although it completed the REMS certification requirements, Lupin refused its request to purchase the drug, stating that it was distributing tolvaptan "through a closed network" of five large corporate pharmacies and "not stocking at the wholesalers," and directing Plaintiff to refer any patients who needed the drug to those pharmacies. (*Id.* ¶¶ 10, 12–15, 18.)

Plaintiff asserts two causes of action, for violation of the Donnelly Act and for deceptive acts and practices under N.Y. Gen. Bus. Law § 349. (*Id.* ¶¶ 20–27.) Although the Complaint describes the action as "seeking injunctive relief and damages" and alleges that Plaintiff "has suffered and continues to suffer irreparable harm and financial damages," it states no sum. (*Id.* ¶¶ 1, 23.) Its prayer for relief requests (A) an injunction "enjoining Lupin Pharmaceuticals, Inc. from continuing its exclusionary 'closed network' practices and compelling it to allow Fleetwood Specialty Pharmacy to purchase generic Tolvaptan"; (B) "[r]easonable attorneys' fees and costs"; and (C) "[s]uch other and further relief as the Court deems just and proper." (*Id.* at Part V.)

**II. Procedural History**

Plaintiff commenced this action in state court on April 9, 2026. (Compl. at 1.) On July 9, 2026, Defendant removed the action, asserting that the amount-in-controversy requirement was satisfied by the value of the requested injunctive relief and, independently, by Plaintiff's request for monetary relief, which is trebled under the Donnelly Act. (ECF No. 1 ¶¶ 8–10.) On August 27, 2026, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 12–13.)

On September 4, 2026, Plaintiff filed its fully briefed motion to remand. (ECF Nos. 16–19.) Plaintiff argues that Defendant has not established that the amount in controversy exceeds $75,000, and it represents that it "expressly and bindingly disclaims any right to recover, and will not accept, any damages in excess of $75,000 in the aggregate, exclusive of interest and costs." (ECF No. 16 at 1.) In opposition, Defendant argues that a private plaintiff may not obtain injunctive relief under the Donnelly Act and therefore must be seeking damages, and that the attorneys' fees mandated by N.Y. Gen. Bus. Law § 340(5) will exceed $75,000. (ECF No. 19 ("Def. Opp.") at 3–8.)

On October 9, 2026, Plaintiff filed a First Amended Complaint ("FAC"), which again asserts claims only under N.Y. Gen. Bus. Law §§ 340 and 349 and requests only injunctive relief. (ECF No. 20 ("FAC") ¶¶ 60–69 & Part VI.) Defendant filed a letter seeking leave to move to strike the FAC as untimely and requesting that its motion to dismiss be deemed unopposed, which Plaintiff opposes. (ECF Nos. 22, 23.)

On October 29, 2026, the Court, having reviewed the pleadings, directed Defendant to show cause why the action should not be remanded for lack of subject matter jurisdiction, and stayed the pending motions. (ECF No. 24.) Defendant filed a supplemental memorandum of law and the Declaration of Jason Gensburger, Lupin's Vice President of Marketing, Pricing, and

Analytics. (ECF No. 25 ("Def. Supp."); ECF No. 25-2 ("Gensburger Decl.").) Defendant argues that the value of the requested injunction to Plaintiff exceeds $75,000 and, in the alternative, requests jurisdictional discovery. (Def. Supp. at 1–3.) Plaintiff did not file a response.

## LEGAL STANDARDS

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991)).

"[A]ny party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (internal citations omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food*, 30 F.3d at 301.

Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). Where the initial pleading seeks nonmonetary relief, the notice of removal may assert the amount in controversy, but where that assertion is contested, removal is proper only "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. 28 U.S.C. § 1446(c)(2); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014).

Where a plaintiff seeks injunctive relief, the amount in controversy is "calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972)); *see also DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 276 (2d Cir. 2006). Attorneys' fees may be counted toward the amount in controversy only where they are recoverable as a matter of right pursuant to statute or contract. *See Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds*, 409 U.S. 56 (1972); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85–86 (2d Cir. 2012) (summary order).

## DISCUSSION

The parties do not dispute that they are citizens of different states. (Def. Opp. at 3; ECF No. 18 ("Pl. Reply") at 2.) The only question is whether Defendant has established that the amount

in controversy exceeds $75,000. The Court first addresses the face of the pleadings, then the value of the requested injunctive relief, then attorneys' fees, and finally Defendant's request for jurisdictional discovery.

**I. The Pleadings**

No amount in controversy can be discerned from the face of the Complaint. Although the Complaint refers in passing to "damages" and "financial damages" (Compl. ¶¶ 1, 23), it states no sum, alleges no facts from which a sum could be estimated, and does not carry any demand for damages into its prayer for relief, which seeks only an injunction, attorneys' fees and costs, and such further relief as the court deems just. (*Id.* at Part V.) Where, as here, the relief sought "lies more in equity," the pleading does not "lend itself to providing a good faith representation of an 'actual amount in controversy.'" *Oppedisano v. Zur*, No. 24-CV-08469 (NSR), 2025 U.S. Dist. LEXIS 110247, at *8 (S.D.N.Y. June 10, 2025). Damages on Plaintiff's § 349 claim, moreover, are limited by statute to "actual damages or fifty dollars, whichever is greater," which a court may increase to no more than three times the actual damages up to one thousand dollars. N.Y. Gen. Bus. Law § 349(h). And Plaintiff has represented to this Court that it will neither seek nor accept damages in excess of $75,000, exclusive of interest and costs. (ECF No. 16 at 1; ECF No. 17 ("Pl. Mem.") at 6; Pl. Reply at 2, 8.) The FAC, the timeliness of which the Court need not decide, is consistent with that representation: it requests only injunctive relief and omits any demand for damages or attorneys' fees. (FAC at Part VI.)

Defendant argues that Plaintiff must be seeking damages because a private plaintiff may not obtain injunctive relief under the Donnelly Act. (Def. Opp. at 3–4.) Whether Plaintiff can maintain a Donnelly Act claim for the relief it seeks, however, goes to the merits of that claim, not to the value of what Plaintiff has placed in controversy, and is a question for the state court on

remand. To sustain removal, therefore, Defendant must establish by a preponderance of the evidence either that the requested injunctive relief is worth more than $75,000 to Plaintiff, or that attorneys' fees recoverable as of right bring the amount in controversy above that threshold. Defendant has done neither.

## II. The Value of the Requested Injunctive Relief

In response to the Order to Show Cause, Defendant contends that the benefit of the requested injunction to Plaintiff is the profit Plaintiff would earn by dispensing tolvaptan. (Def. Supp. at 2.) The Court agrees that Plaintiff's anticipated profit is an appropriate measure of the value of the injunction from Plaintiff's standpoint. *See Correspondent Servs.*, 442 F.3d at 769. Defendant's showing on that measure, however, falls short.

Crediting the Gensburger Declaration, a specialty pharmacy such as Fleetwood "is anticipated to make between roughly $621 to $1,155 in profit by selling a one-month supply" of tolvaptan, and ADPKD patients "generally continue treatment with tolvaptan over several years." (Gensburger Decl. ¶¶ 3–4.) The Declaration thus supplies, at most, an estimated profit per patient per month. It says nothing about how many patients Plaintiff has served, would serve, or has turned away, which is the variable on which any valuation of the injunction depends. Defendant fills that gap with assumptions, positing that if Plaintiff had three patients, it would earn more than $75,000 over approximately three and a half years, and that if it had one, it would do so "in just over ten years of selling tolvaptan." (Def. Supp. at 2–3 & n.1.) These scenarios are attorney argument, not evidence, as Defendant effectively concedes in acknowledging that Plaintiff's "precise customer volume can be obtained only through discovery." (*Id.* at 3.) Even at Defendant's figures, a single patient would generate approximately $7,452 to $13,860 in annual profit, so that the jurisdictional

threshold would be crossed only after roughly five and a half to ten years of uninterrupted sales to that patient.

This record stands in contrast to those in which the Court has found the jurisdictional amount satisfied notwithstanding an indeterminate pleading. In those cases, the plaintiff itself had valued its claim above the jurisdictional threshold. *See Pelligrino v. BJ's Wholesale Club, Inc.*, No. 22-CV-4805 (NSR), 2023 U.S. Dist. LEXIS 182061, at *3 (S.D.N.Y. Oct. 10, 2023) (vacating order to show cause where plaintiffs had demanded $1,500,000 to settle); *Croci v. Zoll Med. Corp.*, No. 24-CV-02137 (NSR), 2024 U.S. Dist. LEXIS 194545, at *6–7 (S.D.N.Y. Oct. 24, 2024) (denying remand where plaintiff's counsel's admitted the demand exceeded $75,000). Defendant offers nothing comparable. At best, its showing establishes that the value of the injunction could exceed $75,000 under certain assumptions; it does not establish, by a preponderance of the evidence, that it does. *See* 28 U.S.C. § 1446(c)(2)(B); *Lupo*, 28 F.3d at 274. Defendant's contention that it "need only allege that there is a 'reasonable probability'" that the jurisdictional amount is met (Def. Supp. at 3) does not alter this conclusion. Because Plaintiff contests the amount in controversy, the preponderance standard governs, *see Dart Cherokee*, 574 U.S. at 88–89, and in any event an assumed patient count projected across an assumed span of years would not establish even a reasonable probability that the amount in controversy exceeds $75,000.

**III. Attorneys' Fees**

Defendant also argues that attorneys' fees, which are mandatory under the Donnelly Act, independently satisfy the amount-in-controversy requirement. (Def. Opp. at 5–8; Def. Supp. at 3.) Even assuming such fees are recoverable as of right, *see Givens*, 457 F.2d at 614, Defendant has not established their amount. It offers no evidence of the fees incurred in this action, relying instead on awards in other, fully litigated antitrust actions and on a hypothetical calculation of hours and

rates (Def. Opp. at 7 & n.3), and it concedes that counsel's rate and hours "cannot be determined without discovery" (Def. Supp. at 3). Such speculation is not proof by a preponderance of the evidence. *See Kimm*, 449 F. App'x at 86. Moreover, fees under § 340(5) are available only to a person "who shall sustain damages," N.Y. Gen. Bus. Law § 340(5), a recovery Plaintiff has bindingly limited, and the FAC no longer requests fees at all. (ECF No. 16 at 1; FAC at Part VI.)

**IV. Jurisdictional Discovery**

In the alternative, Defendant requests limited jurisdictional discovery concerning Plaintiff's anticipated patient volume and the hours Plaintiff's counsel has billed. (Def. Supp. at 1, 3.) Whether to permit jurisdictional discovery "is committed to the sound discretion of the Court." *Roberto'Neill v. LCC*, No. 25 CV 10786 (NSR), 2026 U.S. Dist. LEXIS 85300, at *10 (S.D.N.Y. Apr. 16, 2026) (quoting *PMX Agency LLC v. Blackstreet Cap. Holdings, LLC*, No. 16-CV-03849 (ALC), 2017 U.S. Dist. LEXIS 133305, at *2 (S.D.N.Y. Aug. 21, 2017)). Courts will not sanction "what could amount to a fishing expedition" where the party seeking discovery offers no "more than mere speculations or hopes that jurisdiction exists." *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-cv-6964 (NSR), 2019 U.S. Dist. LEXIS 162087, at *33–34 n.10 (S.D.N.Y. Sept. 21, 2019) (quoting *Ritchie Cap. Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819 (VB), 2015 U.S. Dist. LEXIS 176994, at *7 (S.D.N.Y. Sept. 21, 2015)). Defendant seeks discovery precisely because it cannot say how many patients Plaintiff has served or would serve. Having removed this action, Defendant bore the burden of establishing the amount in controversy, *United Food*, 30 F.3d at 301, and it has had two opportunities to do so: in opposing remand and in responding to the Order to Show Cause. Permitting it to develop through discovery the jurisdictional facts it lacked at removal would be at odds with the principle that doubts are resolved against removability. *See Lupo*, 28 F.3d at 274. Accordingly, Defendant's request for jurisdictional discovery is denied.

Because Defendant has failed to establish that the amount in controversy exceeds $75,000, exclusive of interest and costs, the Court lacks subject matter jurisdiction, and remand is required. 28 U.S.C. § 1447(c). In light of this determination, the Court does not reach Defendant's motion to dismiss or the parties' dispute concerning the timeliness of the FAC, which are matters for the state court on remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED, and Defendant's request for jurisdictional discovery is DENIED. The Clerk of Court is respectfully directed to remand this action to the Supreme Court of the State of New York, County of Westchester, Index No. 61650/2026, and to mail a certified copy of this Opinion & Order to the clerk of that court pursuant to 28 U.S.C. § 1447(c). The Clerk of Court is further directed to terminate the motions at ECF Nos. 12 and 16 and the letter motion at ECF No. 22, and to close this case.

SO ORDERED.

Dated: November 23, 2026
White Plains, New York

Nelson S. Román, U.S. District Judge